Filed 11/15/24  In re A.M. CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES BUREAU,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>T.W.,<br><br>      Defendant and Appellant. | A170824<br><br>(Contra Costa County Super. Ct. No. J2300115) |

Defendant T.W. appeals from an order terminating parental rights under Welfare and Institutions Code section 366.26.[1]  He contends the Contra Costa County Children & Family Services Bureau (the Bureau) failed to comply with the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; ICWA).  We agree and conditionally reverse.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

BACKGROUND

The Shasta County Health and Human Services Agency (Shasta County) received a referral alleging the mother was homeless,[2] did not have sufficient items to care for A.M., made negative statements about A.M., and had a history of mental health issues and substance abuse. A different individual, C.M., was listed as the father on A.M.'s birth certificate.

Shasta County subsequently filed a petition alleging A.M. came within the jurisdiction of the juvenile court under section 300 based on the mother's substance and alcohol abuse, anger management, and mental health issues. The petition noted C.M.'s whereabouts were unknown. At the subsequent detention hearing, the court found the petition true and detained A.M. At that time, the mother denied having any Indian ancestry.

Both the mother and C.M. submitted ICWA-020 forms, in which they denied having any Indian ancestry. In an ICWA-010 form attached to an amended petition filed by Shasta County, it noted there was "no reason to believe [A.M.] is or may be an Indian child."

In connection with the jurisdiction and disposition hearing, Shasta County filed a report that noted C.M. was not A.M.'s father and identified T.W. as A.M.'s alleged father. In a subsequent addendum report, a social worker for Shasta County reported T.W.'s Indian ancestry was unknown, and he was reportedly residing with the paternal grandfather.

At the jurisdiction and disposition hearing, the court granted C.M.'s motion to rescind paternity and found T.W. to be the alleged father of A.M. The court also found that ICWA did not apply. The court returned A.M. to

---

[2] We do not discuss the mother in detail because she is not a party to this appeal.

the mother's custody, ordered family maintenance services, and transferred the matter to Contra Costa County.

Contra Costa County Superior Court held a transfer-in hearing, at which the mother again denied having Indian ancestry. She stated T.W. was A.M.'s biological father but she was not in contact with him.

The Bureau subsequently filed a supplemental petition based on the mother's chronic substance abuse and neglect, and failure to comply with drug testing, counseling, and parenting services. The attached ICWA-010 form again noted mother denied having Indian ancestry. The court ordered A.M. detained.

T.W. had not been present at any of the prior proceedings, and the Bureau had noted T.W.'s whereabouts and circumstances were unknown. However, a memorandum to the court stated T.W. had since contacted the Bureau after receiving a letter from its due diligence clerk. T.W. reported that he lived in Nevada and provided the Bureau with his email address and phone number. When asked about Indian ancestry, T.W. responded " 'I don't know if I belong to a tribe.' " (Italics omitted.)

At the subsequent jurisdictional hearing, T.W. was absent. He was again absent at the contested jurisdictional hearing.

The Bureau filed a supplemental memorandum "to update the Court on matters related to ICWA." The memorandum noted the mother had previously submitted an ICWA-020 form indicating she had no Indian ancestry. The Bureau also "made a formal ICWA inquiry to the maternal grandmother," "made phone calls to maternal aunts," and "reached out to [the] maternal uncle." All relatives denied Indian ancestry.

The memorandum also noted the Bureau called T.W. "to follow up on a previous ICWA inquiry." T.W. "stated that he does not have any Native

3

American ancestry, but would reach out to his father to confirm." T.W. stated the paternal grandfather "would be the only relative with any further information on the matter." The disposition report noted the Bureau was waiting for T.W. to return his ICWA-020 form.

At the disposition hearing, the court noted it considered the Bureau's reports and found "no reason to believe or reason to know the child is an Indian child and ICWA does not apply."

A subsequent paternity test confirmed T.W. was A.M.'s father. Although T.W. stated he wished to be involved in A.M.'s life, he refused to participate in a background check and related background inquiries or provide his address.

The Bureau submitted a status review report in advance of the six-month reunification hearing. The Bureau noted it still had not received the ICWA-020 form from T.W. and had not received a response to its attempt to follow-up on the matter. The Bureau further noted it had informed T.W. seven times of the need to appear in court and had twice provided the contact information for the Contra Costa Juvenile Advocates office. However, T.W. had neither attempted to obtain counsel nor communicated with the Bureau.

At the six-month review hearing, the court terminated the mother's reunification services. T.W. was not present at the hearing. The court scheduled the matter for a section 366.26 hearing.

T.W. appeared at the section 366.26 hearing. On the date of the hearing, T.W. filed his ICWA-020 form stating he did not have any Indian ancestry. However, at the hearing T.W. stated he believed A.M.'s paternal great-grandmother was Indian because of her physical characteristics, but he was not certain and did not believe she ever lived on a reservation. T.W. provided the court with the paternal great-grandmother's name and the

4

paternal grandmother's name and date of birth. The court also conducted an ICWA inquiry as to the maternal uncle, the maternal uncle's partner, and the maternal grandmother. Following that inquiry, the court concluded "there is no reason to believe or reason to know the child is an Indian child and ICWA does not apply." The subsequent court findings state ICWA notice "has been given as required by law." The court continued the hearing at T.W.'s request.

T.W. was present at the continued section 366.26 hearing. The court terminated parental rights and found adoption to be in A.M.'s best interest. T.W. timely appealed.

## DISCUSSION

On appeal, T.W. raises a single issue—whether the juvenile court properly complied with ICWA. He contends the court failed to adequately inquire as to his Indian heritage. County counsel acknowledges the record is silent as to whether the Bureau attempted to locate and contact paternal relatives mentioned by T.W. regarding potential Indian ancestry. County counsel thus acknowledges a conditional reversal to comply with ICWA is appropriate. We agree.

"In 1978, Congress enacted the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) to 'formalize[ ] federal policy relating to the placement of Indian children outside the family home.' [Citation.] Under ICWA's state analogue, the California Indian Child Welfare Act (Cal-ICWA; Welf. & Ins. Code, § 224 et seq.), courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child' in dependency cases. [Citation.] Child welfare agencies discharge this state law duty by 'asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect,

5

whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' " (*In re Dezi C*. (2024) 16 Cal.5th 1112, 1124–1125.) " 'Extended family member' means 'a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' " (*Id.* at p. 1132.)

In *In re Dezi C.*, *supra*, 16 Cal.5th 1112, the California Supreme Court recently clarified the obligations of child welfare agencies to inquire whether a child is or may be an Indian child. "When the agency has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required. [Citations.] The required further inquiry includes (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services; and (3) contacting tribes the child may be affiliated with and anyone else that might have information regarding the child's membership or eligibility in a tribe." (*Id.* at pp. 1132–1133.) Even if the court initially finds ICWA does not apply, "an agency and the court have a continuing duty under ICWA, and the court 'shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry.' " (*In re Dezi C.*, at p. 1134.)

The California Supreme Court concluded an inadequate inquiry requires a conditional reversal. (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1136.) The court explained, "When a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the agency's error is prejudicial. [Citations.] '[U]ntil an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.' "

6

(*In re Dezi C.*, at p. 1136.) However, the court further noted that when the sole issue raised on appeal is the adequacy of the ICWA inquiry, a limited remand procedure is appropriate. (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1137 [" ' "[W]hen the validity of a [judgment] depends solely on an unresolved or improperly resolved factual issue which is distinct from [the judgment], such an issue can be determined at a separate post-judgment hearing and if at such hearing the issue is resolved in favor of the [agency], the [judgment] may stand." ' "].)

Here, T.W. only contests the adequacy of the ICWA inquiry, and he has not identified any error in the dependency proceedings that would justify outright reversal of the judgment terminating parental rights. In connection with ICWA, he asserts the Bureau failed to conduct an inquiry as to the paternal great-grandmother or paternal grandfather. Nor did the Bureau attempt to contact any of T.W.'s eleven paternal half-siblings. The record supports his position. Bureau reports indicate T.W. expressed uncertainty regarding his Indian ancestry and stated his father (A.M.'s paternal grandfather) would have additional information. T.W. also indicated he believed his paternal great-grandmother had Indian physical characteristics but was unsure of her heritage. Nothing in the record indicates the Bureau attempted to contact the paternal grandfather, despite being aware of his address, or any members of the paternal grandmother's family. Nor does the record indicate any efforts to contact any of his eleven paternal half-siblings. Accordingly, a conditional reversal to comply with ICWA is appropriate.

Upon conditional reversal, the Bureau shall conduct additional inquiry—specifically with regard to the paternal relatives—and documentation efforts consistent with its duties and the court shall hold a hearing thereafter to determine whether, in light of the outcome of the

7

inquiry as documented, ICWA applies.  If the juvenile court determines the inquiry is proper, adequate, and duly diligent and concludes that ICWA does not apply, any inquiry error is cured, and the judgment would be reinstated. Alternatively, if the inquiry reveals a reason to know A.M. is an Indian child and ICWA applies, then the judgment must be reversed.

## DISPOSITION

The order terminating parental rights is conditionally reversed to allow the Bureau to comply with ICWA, consistent with this opinion.  If the juvenile court thereafter finds a proper and adequate further inquiry and due diligence has been conducted and concludes ICWA does not apply, then the court shall reinstate the order terminating parental rights.  If the juvenile court concludes ICWA applies, then it shall proceed in conformity with ICWA and California implementing provisions.


_____
PETROU, J.

WE CONCUR:

_____
TUCHER, P. J.

_____
FUJISAKI, J.


*In re A.M.*/A170824

8